Julius Katz, an Infant, by Max Katz, His Guardian ad Litem, Appellant, *v.* Charles Lutz, Respondent, Impleaded with Theodore Lutz and Others, Defendants.

First Department, February 23, 1917.

**Master and servant — negligence — injury to infant struck by piece of glass bottle thrown by employee — when master liable for acts of servant done negligently, wantonly or willfully.**

In an action for personal injuries, it appeared that the plaintiff, a child five and one-half years of age, while standing with other children on the sidewalk and looking through a transom at an employee of the defendant who was operating a machine for rinsing bottles, was struck in the eye by a piece of a broken bottle thrown by the defendant's employee at the children who had been throwing dirt and sand on the employee and the machine. The plaintiff, however, had not been throwing things, but was merely watching the other children.

Evidence examined, and *held*, to establish that the employee first ordered the children to go away, and when they refused threw the glass for the purpose of enabling him to proceed with the defendant's business; that the act of throwing the bottle was performed to further the defendant's business and in the general scope of his employment; that, therefore, the defendant was liable for the employee's acts, even though they were performed negligently, wantonly or willfully.

Appeal by the plaintiff, Julius Katz, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on or about the 13th day of January, 1915, setting aside the verdict of a jury in plaintiff's favor for $5,000, and granting a motion for a nonsuit, and also from the judgment entered in said clerk's office on the same day, dismissing the complaint pursuant to said order.

*Julius Hilbern Cohn,* for the appellant.

*Laurence Arnold Tanzer* [*Walter H. Liebmann* and *Arthur C. Kahn*], for the respondent.

Dowling, J.:

The defendant was the owner of premises situate on Gerry street in the borough of Brooklyn, city of New York, known as

"Atlantic Garden," and in the basement thereof conducted a beer bottling establishment, in which his employees, among other details of the business, operated machines for rinsing bottles, which were visible from the sidewalk. The basement in which the defendant's machines were operated extended as a vault beyond the building line for a distance of about five and a half feet through the sidewalk and the roof of the basement outside the building line was a little more than two feet above the walk. In the front of this projection there were eight windows in which were set transoms, working on hinges from the top, admitting air and light. About three inches beyond the transom there was constructed upon the walk an iron railing which was five feet five inches in all from the building line and eight feet seven inches from the curb. In this railing were set bars about four inches apart, at the upper portion of which was fancy scroll work. The bottle washing machine was a novelty for those in the neighborhood and had been in operation a few months, and adults as well as children stopped to see its method of working, which could be plainly observed from the sidewalk when the transoms were opened, as they almost invariably were, to secure light and air for the workmen in the basement.

On the day in question, March 19, 1913, in the evening, while the men were working, overtime, four small children, including the plaintiff, who was then five and a half years of age, were crouched by the railings in front of the transoms which were then open. Some of them were throwing dirt and sand at the workers and on the machines, when one of the defendant's workmen, identified as one Meisenheimer, called out, "Go away, let us do our work," and as the children continued throwing down sand and other things on the machine Meisenheimer picked up a piece of broken bottle and threw it in the direction of the children through the transom, when passing through the railing it struck the plaintiff in the eye and cut him so severely that his entire right eye-ball was removed. The evidence is that the plaintiff was not throwing things down, but was just watching the other children. This is the general trend of the testimony given by all the eyewitnesses to the accident who were produced save one, a witness called by the defendant, who sought to make it appear

that, instead of the workman throwing the piece of bottle because the children were interfering with his work, he was flirting with one of the older girls who was standing there and became enraged when the children laughed at him and made some observations concerning his conduct, as the result whereof he threw the piece of bottle. This witness also testified that the men were not working at the time and had not been for some five minutes. The jury, however, by their verdict, have demonstrated that they accepted the testimony of the plaintiff's witnesses, which upon this record they were justified in doing.

The trial court instructed the jury very fully as to the law upon the question of the master's liability for the act of his servant. He first read to the jury at some length from the opinion of Judge ALLEN in the case of *Mott* v. *Consumers' Ice Company* (73 N. Y. 543). He then proceeded to say: "Gentlemen, perhaps I can restate that a little more briefly so that you will understand it a little more clearly than the learned judge said it. Anyway, I can do it more briefly. That the law is to the effect that if the servant, in this case Meisenheimer, was actually working for Mr. Lutz at the time, engaged in the service for which he was employed and for the purpose of furthering the business of Mr. Lutz, while acting in the scope and course of his employment, threw this missile which caused this accident, then the law says that Mr. Lutz is liable, even if it was thrown wilfully or maliciously. But the law is not unreasonable. It says that question may be passed upon by a jury and that the jury must say under their solemn oaths whether, as in this case, at the time that this missile was thrown, and this boy was injured, Meisenheimer was performing the business of the defendant, acting within the scope of his employment and authority. If he was, even if he did it wilfully, then the law says that Mr. Lutz is responsible, but if he was not, even while working for Mr. Lutz, that does not control the case at all, the mere fact that he was working for him, but if, while working for him, he stepped aside from the course of his employment and for some reason of his own, if he was miffed at something, if he became angry at something, and stepped aside from his employ-

ment, I have said, and picked up a piece of glass and threw it not knowing where it was going to hit or whom it was going to injure, then he was not in the employ of Mr. Lutz at all and the law is not so unreasonable as to say that the plaintiff could recover from Mr. Lutz any more than it could recover of you or of me." At the close of his main charge he summarized the situation as follows: "That is a question upon which you must get your minds together, like twelve sensible men, and say what amount will fairly compensate him for the injury, provided you come to that question, keeping in mind the other two questions that you are to solve. *First,* was Meisenheimer acting within the fair scope and object of his employment at the time that he threw this piece of glass? *Second,* was he furthering his master's interests? Did he intend to do it? Was he working for his master at that particular time? If he was, even if he threw it maliciously or wilfully, Mr. Lutz is liable. If he stepped outside the course of his employment, even if he was working at that time, the very moment, for Mr. Lutz, and for some purpose of his own wilfully or maliciously threw this piece of glass and struck the child in the eye and put the eye out, then he was outside of the course of his employment and Mr. Lutz is not responsible." One of the jurors then asked the following question: "I would like to ask a question which might save a lot of time to the jury. If Meisenheimer while he was working at his machine was in some way provoked by these children in order to throw that missile out through the window, he had to walk away and step to the window to do it, how would that be?" The court: "It would be the same question that I have stated to you. It is for you to say whether in doing that particular thing he was moved to do it in the interest of Mr. Lutz; that he was acting in the scope and course of his employment and that he believed he was doing it in the interest of Mr. Lutz." Mr. Proskauer (defendant's counsel): "In that connection will your Honor charge the jury that in determining whether Meisenheimer was acting in the scope of his employment, a jury are to take into consideration the allegation of the complaint which is conceded, that his employment was that of a bottle washer." The court: "Yes, it has been proven that he was

a bottle washer. That was his business." Mr. Proskauer: "I mean to emphasize that he was not a watchman or anybody vested with authority." The court: "He was simply employed, as you will remember, gentlemen, not as a caretaker or watchman upon the premises, but simply as a workman upon a bottle washing machine." The jury, acting within the limits of the issues as laid before them by the court, found by their verdict that Meisenheimer in throwing the piece of glass bottle through the open transom in the direction of these children who had been interfering with his work by throwing sand and dirt upon him and his machine, had first ordered them away to allow him to do his work and when they refused to go away he threw the missile for the purpose of enabling him to proceed with the discharge of his master's business; they found that what Meisenheimer did was done to further the master's business and in the general scope of his employment; and, therefore, the employer was liable for the servant's acts, even if they were done negligently, wantonly or willfully. (*Mott* v. *Consumers' Ice Company, supra.*)

The judgment and order appealed from will, therefore, be reversed, with costs and disbursements, and the verdict reinstated.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concurred.

Judgment and order reversed, with costs, and verdict reinstated.